UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD SCHMITT,<br>　　　Plaintiff, | :<br>:<br>: |
| -vs- | :     Civil No. 3:06cv726 (PCD) |
| GENERAL ELECTRIC CO.,<br>　　　Defendant. | :<br>:<br>: |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff Richard Schmitt brings this action pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 626 et seq., for age discrimination and retaliation, and pursuant to Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq., for disability discrimination and retaliation. On February 12, 2007, Defendant General Electric Co. ("GE") filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. No. 26.] For the reasons stated herein, this motion is **granted in part** and **denied in part.**

**I.　BACKGROUND**

Plaintiff Richard Schmitt was born on May 17, 1942 and has been employed as a corporate pilot for Defendant GE for 37 years. (Compl. ¶¶ 3, 12.) According to Schmitt, GE has several policies restricting pilots from performing certain duties due to their age. Although GE eliminated its mandatory retirement policy for pilots over age sixty in 1991, the GE policy manual continues to encourage pilots to retire at age sixty. (Id. ¶ 14.) The GE Corporate Air Transport policy originally required pilots over fifty to fly only one type of equipment. The policy was revised to restrict pilots over age fifty-five to only one type of equipment until April, 2004, when the policy was again revised to allow dual qualification for all pilots. (Id. ¶ 15.) As

1

a result of these policies, Plaintiff was not allowed to fly or be trained to fly multiple types of equipment during the years 1992 to 2004. (Id.) Although Schmitt requested to be trained in larger or new equipment during the years 1999 to 2004, he was denied the opportunity to do so because of his age. (Id. ¶¶ 19, 23.) In particular, on April 20, 2004, Schmitt's supervisor, John Joyce, told Schmitt that he was not permitted to train on the new Boeing business jet which Schmitt has assisted GE and Boeing in developing. (Compl. ¶¶ 17, 20.) Joyce also spoke about Schmitt's age and retirement and told Schmitt that he was considering implementing a pay reduction for pilots over age sixty, limiting their work to second-in-command positions, and refusing to allow them to fly overseas. (Id. ¶ 21.)

GE policy also requires pilots over the age of sixty to undergo "rigorous" physical testing by GE Medical above and beyond what is necessary to retain an FAA Class 1 Medical Certificate. (Compl. ¶ 16.) In 2004, the company doctor told Schmitt that there was an age issue in going to the Boeing school. (Id. ¶ 27.) In March, 2005, Joyce told Schmitt that he would be removed from the flight schedule if he did not get his overdue company medical examination because he was not a "spring chicken" anymore. (Id. ¶ 26.) Plaintiff alleges that he and other GE pilots over age fifty-five have suffered a loss of pay of over $30,000 a year because they have been refused training and promotion to larger equipment to which they were entitled based on their skill and experience. (Id. ¶ 25.)

Plaintiff also alleges discriminatory treatment by GE based on his perceived disability. On a trip overseas in 1995, Plaintiff developed an allergic reaction that caused a severe rash. To control the reaction, Plaintiff was put on medication that disallowed him to fly between May 1998 and March 1999, and GE put him on long-term disability. (Compl. ¶ 22.) After Schmitt was cleared by both his own doctor and the GE doctor and he regained his FAA medical

2

certificate, GE refused to allow Schmitt to return to work for an additional three months. (Id.) Between 1999 and July 2004, Schmitt was refused training on and promotion to larger equipment because he could possibly have another allergic reaction if he flew to "third world" countries. (Id. ¶ 23.) In 2004, Joyce told Schmitt that he needed a doctor's letter stating that his recurring rash did not limit his ability to fly, even though Schmitt regularly flies internationally without an adverse reaction and only once since 1995 has asked to be taken off a trip to Japan to see his physician. (Id. ¶ 27.) After receiving Schmitt's doctor's letter, Joyce demanded that the GE company doctor confer with Schmitt's dermatologist for verification. (Id.) After the GE doctor verified Schmitt's fitness to fly and Schmitt continued to pass the FAA's medial requirements, Joyce continued to harass Schmitt regarding his possible adverse reaction if Schmitt was scheduled to fly to "third world" countries. (Id.) Joyce has also told Schmitt that he refused to upgrade him to larger aircraft because he thought he might become ill while in a "third world" country and delay the progress of the trip. (Id. ¶ 21.) Plaintiff further alleges that the Boeing Pilot Job Description was specifically created to eliminate him because of his perceived disability by stating that 30-50% of a Boeing Pilot's international travel would include "third world" countries. (Id. ¶ 27.)

In January 2000 and at other times thereafter, Schmitt complained to GE of age discrimination and of disability or perceived disability discrimination. (Compl. ¶¶ 33, 39.) Until July, 2004, Joyce repeatedly reaffirmed GE's unwillingness to allow Schmitt to be trained or fly larger equipment because of his age and because of his disability or perceived disability. (Id. ¶¶ 33, 40.) Until November, 2005, Joyce continued to justify his reluctance to upgrade Schmitt to larger equipment on the grounds that certain countries limit commercial pilots over age sixty. (Id. ¶ 33.)

3

On June 17, 2005, Schmitt filed a discrimination claim against GE with the Equal Employment Opportunity Commission ("EEOC") and received a Right-to-Sue Letter dated February 9, 2006. (Compl. ¶¶ 9, 11.) Schmitt filed his Complaint in this action on May 10, 2006, alleging that his age and his disability were determining factors in GE's decision to deny Schmitt training, promotion and salary increases, and that GE knowingly and willfully discriminated against him in violation of the ADEA and the ADA. (Id. ¶¶ 28, 29, 36, 37.) Schmitt also alleges that in retaliation for his complaints of age and disability discrimination, GE refused to train, promote, pay, or allow him to fly to "third world" countries. (Id. ¶ 34.)

## II. STANDARD OF REVIEW

The function of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 776 (2d Cir. 1984) (citation omitted). In deciding Defendant's motion to dismiss for failure to state a claim, the Court accepts as true the material facts alleged in the complaint and draws all reasonable inferences in Plaintiff's favor. Feiner v. SS & C Technologies, 11 F. Supp. 2d 204, 206-07 (D. Conn. 1998). A complaint should be dismissed for failure to state a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc., 936 F.2d 759, 762 (2d Cir. 1991).

An employment discrimination complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S.Ct. 992 (2002) (quoting Fed. R. Civ. P. 8(a)(2)). In order to survive a motion to dismiss, an employment discrimination plaintiff need not plead a prima facie case of

4

discrimination, but must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 512. However, as the Second Circuit has stated, the holding in Swierkiewicz does not mean that "[p]laintiffs bear no burden at the pleading stage." Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 343 (2d Cir. 2006). Rather, "a plaintiff must allege those facts necessary to a finding of liability . . . [and] a plaintiff's allegations, accepted as true, must be sufficient, to establish liability." Id. at 343-44.

Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Smith v. Cingular Wireless, No. 3:05cv1149 (MRK), 2006 WL 1276121, at *1 (D. Conn. April 10, 2006). Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter. Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989); Blunt v. Aetna/US Healthcare, No. Civ.3:04CV483 (CFD), 2005 WL 1561800, at *1 n.2 (D. Conn. June 30, 2005).

### III. DISCUSSION

#### A. Statute of Limitations

Before a plaintiff files a complaint in federal court under Title VII, the ADEA, or the ADA, her or she must first present the claims forming the basis of such a suit in a complaint to the EEOC or the equivalent state agency. 42 U.S.C. § 2000e-5 (2000); 29 U.S.C. § 626(d); see also Williams v. New York City Hous. Auth., 458 F.3d 67, 69 (2d Cir. 2006). After doing so, a plaintiff must file her complaint in federal court within 300 days of the alleged discriminatory action. See 42 U.S.C. § 2000e-5(e) (establishing 300-day time bar for Title VII claims); 29 U.S.C. § 626(d)(2) (same for the ADEA); 42 U.S.C. § 12117 (applying § 2000e-5 to the ADA).

5

This statutory requirement is analogous to a statute of limitations barring all claims arising from discrete acts which occurred outside of the 300-day period. Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996). Schmitt filed a charge with the EEOC on June 17, 2005. (Compl. ¶ 9.) Therefore, the events on which his claims are based must have occurred within the 300 days preceding June 17, 2005, and any claim based on an event occurring before August 20, 2004 is time-barred. Defendant GE moves to dismiss all of Schmitt's claims on the ground that they are barred by this statute of limitations. In response, Schmitt argues that the 300-day limitation should not bar his claims based on discriminatory acts occurring before August 20, 2004, because they are part of a continuing pattern of conduct constituting a continuing violation.

Under the continuing violation exception to the statute of limitations for Title VII, ADEA, and ADA claims, "'if a plaintiff has experienced a continuous practice and policy of discrimination, ... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" Washington v. County of Rockland, 373 F.3d 310, 317 (2d Cir. 2004) (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001)). To demonstrate that the doctrine applies, the plaintiff must show both the existence of an ongoing policy of discrimination and that at least one act of discrimination in furtherance of the policy occurred within the 300-day limitations period. Patterson v. County of Oneida, 375 F.3d 206, 220 (2d Cir. 2004); see also Cornwell v. Robinson, 23 F.3d 694, 703-04 (2d Cir. 1994). The alleged act of discrimination within the limitations period must be in furtherance of the discriminatory policy rather than an isolated instance of discrimination. Mirasol v. Gutierrez, 2006 WL 871028, at *3 (S.D.N.Y. 2006); see also Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993), cert. denied, 511 U.S. 1052, 114 S.Ct. 1612 (1994). However, according to a recent

6

decision by the Supreme Court severely limiting the continuing violation exception, events that occurred prior to the 300-day time limitation are not actionable, even if other acts of discrimination occurred within the statutory time period. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105, 122 S.Ct. 2061 (2002) ("Morgan").[1] "[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." Id. at 112. The Supreme Court identified "termination, failure to promote, denial of transfer, or refusal to hire" as examples of "discrete discriminatory act[s]." Id. at 114.

Schmitt's ADEA claim is subject to the continuing violation exception and is thus not time-barred. The Complaint sufficiently claims the existence of an ongoing policy of age discrimination by alleging that Defendant's policy manual encourages pilots to retire at sixty and that pilots over the age of sixty are required to undergo physical testing beyond that necessary to retain FAA Class 1 Medical Certification. (Compl. ¶¶ 14, 16.) These allegations sufficiently satisfy the required showing of a discriminatory policy at this pleading stage. Schmitt argues that GE's repeatedly denying him training, promotion, and salary increases constitute discriminatory acts amounting to a continuing violation. However, such denials are the kind of "discrete acts" specifically identified by the Supreme Court as having to occur within the 300-day limitation period. Morgan, 536 U.S. at 114. See also, e.g., Washington v. County of Rockland, 373 F.3d 310, 317 (2d Cir. 2004) (employer's decision to initiate disciplinary charges and further acts of prosecuting those charges were discrete acts not subject to continuing violation exception); Elmenayer v. ABF Freight System, Inc., 318 F.3d 130, 134-35 (2d Cir.

---

[1] Although Morgan was a Title VII case, it applies equally to ADEA claims. Coudert v. Janney Montgomery Scott, LLC, No. 3:03-CV-324 (MRK), 2005 WL 1563325, at *6 (D. Conn. July 01, 2005). See also Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (observing that ADEA claims are properly analyzed under the same framework as Title VII claims).

2003) ("an employer's rejection of an employee's proposed accommodation for religious practices does not give rise to a continuing violation"). but see Petrosino v. Bell Atlantic, 385 F.3d 210, 220 (2d Cir. 2004) ("evidence of earlier promotion denials may constitute relevant 'background evidence in support of a timely claim.'" (citations omitted)). Individual discriminatory incidents which Schmitt experienced before August 20, 2004, such as Joyce's alleged conversation with Schmitt on April 20, 2004, in which he discussed reducing the pay of pilots over age sixty (Compl. ¶ 21; see also id. ¶¶ 17, 20, 33), are also not actionable.

Schmitt does, however, allege a timely act that occurred in March, 2005, within the statutory time period, when Joyce told Schmitt he would be removed from the flight schedule if he did not get his company medical examination completed because he was not a "spring chicken" anymore. (Id. ¶ 26.) Defendant attempts to dismiss this allegation on the ground that it does not plead an "adverse employment action" necessary to establish a prima facie ADEA claim, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973); Texas Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-254, n. 6, 101 S.Ct. 1089 (1981), but Defendant misstates Plaintiff's burden at this stage in the litigation. The requirements of establishing a prima facie case of discrimination do not apply to the pleading standard that Plaintiff must satisfy in order to survive a motion to dismiss. Swierkiewicz, 534 U.S. at 511, 122 S.Ct. 992. Accordingly, for the purpose of reviewing the statutory limitation period on a motion to dismiss, Joyce's alleged "spring chicken" comment in March, 2005 sufficiently qualifies as an act of discrimination in furtherance of a discriminatory policy that occurred within the 300-day limit. Defendant's motion to dismiss Plaintiff's ADEA claim is therefore denied.

Similarly, in stating a claim of retaliation for his age discrimination complaint, none of

Schmitt's allegations fall within the statutory limitation period except for an allegation that "until November 2005" Joyce "continued to justify" his reluctance to train or promote Schmitt. (Compl. ¶ 33.) Defendant argues that an employer's refusal to undo a prior act of discrimination is not a "fresh act of discrimination" which qualifies as an "adverse employment action" for purposes of establishing a prima facie case of retaliation. See Haynes v. Level 3 Commc'ms LLC, 456 F.3d 1215, 1228 (10th Cir. 2006). However, for the same reasons as stated above, Schmitt need not establish a prima facie case of discriminatory retaliation in the employment context at this stage in the proceeding. For purposes of notice pleading pursuant to Rule 8, Plaintiff has alleged facts in his retaliation claim dating to November 2005 and therefore falling within the 300-day limitation period. Therefore, Defendant's motion to dismiss Plaintiff's age discrimination retaliation claim is denied.

Plaintiff's claim of disability discrimination also survives Defendant's motion, though at first blush it does not appear to be actionable. Schmitt alleges that between 1999 and July 2004 GE also refused to train and promote him due to his perceived disability (Compl. ¶ 23), allegations which are the functional equivalent to discrete acts of failure to train and promote falling outside the 300-day limitation period. Schmitt does generally allege that "in 2004" Joyce harassed him regarding his perceived disability (id. ¶¶ 21, 27), but he fails to specifically state whether any discrete discriminatory acts occurred after August 20, 2004, or whether the harassment was ongoing both prior to and during the statutory limitation period. Schmitt also alleges that the Boeing Pilot Job Description was created in order to discriminate against him on account of his perceived disability (id. ¶ 27), but he does not state the date when the job description was created, leaving the Court unable to conclude whether such a discrete act of discrimination fell within the 300-day limitation period. When the Court is unable to ascertain

from the face of the complaint when the alleged acts occurred, the Court may dismiss the claims that may have accrued outside the limitations period with leave to replead to set forth the dates that the alleged discriminatory acts occurred. Davis v. City of New York, No. 94 CIV. 7277 (SHS), 1996 WL 243256, at *10 (S.D.N.Y. May 9, 1996). In this case, reading the complaint in the light most favorable to the nonmoving party, the Court may infer that the discriminatory incidents that allegedly occurred "in 2004" actually occurred after August 20, 2004 and therefore within the 300-day limitations period. Accordingly, the Court will not dismiss Schmitt's ADA claim on the grounds that it is time-barred. See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998) (an affirmative defense may be solved on a Rule 12(b)(6) motion only if "clearly established by the allegations within the complaint"); see also EEOC v. Creative Playthings, Ltd., 375 F. Supp. 2d 427, 436 (E.D.P.A. 2005) (citing Hanna v. United States, 514 F.2d 1092, 1095 (3d Cir. 1975) (a claim is not properly dismissed pursuant to a Rule 12(b) motion if there is a question of fact as to whether the claim was brought within the statute of limitations).

Schmitt's claim of retaliation for his disability discrimination complaint, however, is time-barred. Schmitt alleges that in retaliation for his complaining to Defendant of disability or perceived disability discrimination, Joyce reaffirmed GE's unwillingness to train or promote him "up to July 2004" (Compl. ¶ 40), a month shy of the 300-day limitations period. This retaliation claim is thus clearly time-barred and is hereby dismissed.

**B.     Failure to Exhaust Administrative Remedies**

Prior to filing a complaint in federal court under Title VII, the ADEA, or the ADA, a plaintiff must timely exhaust his administrative remedies through the requisite EEOC process. Belgrave v. Pena, 254 F.3d 384, 386 (2d Cir. 2001). A district court only has jurisdiction to hear

Title VII claims that are included in an EEOC charge or are based on conduct reasonably related to that alleged in the EEOC charge. Alungbe v. Bd. of Trs. of CSU, 283 F. Supp. 2d 674, 681 (D. Conn. 2003). A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation that can reasonably be expected to grow out of the charge that was made. Fitzgerald, 251 F.3d at 359-60.

In its reply memorandum, Defendant argues that Plaintiff's discrimination claims should be dismissed because he did not raise a "pattern or practice" claim in his EEOC charge and therefore did not exhaust his administrative remedies. In response, Plaintiff argues that his pattern or practice claim is reasonably related to the claims alleged in his EEOC charge so as to satisfy the exhaustion requirement. "In determining whether claims are reasonably related, the focus should be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (internal citations and quotation marks omitted). The EEOC charge in this case has not been submitted as evidence before this Court, and so it cannot determine the scope of Plaintiff's EEOC claims. However, loose pleading is permitted before the EEOC, Jute v. Hamilton Sundstrand, 420 F.3d 166, 177 (2d Cir. 2005), and at this stage in the proceedings the Court reads the Complaint and the moving papers in the light most favorable to the Plaintiff. Accordingly, this case will not be dismissed for a failure on Plaintiff's part to exhaust his administrative remedies.

In its reply, Defendant also attempts to argue that Plaintiff's "pattern and practice" discrimination claim is substantively flawed. However, because Defendant failed to brief the issue of whether, the statute of limitations issue aside, Plaintiff properly stated a claim upon which relief can be granted, the Court will not address this argument at this time.

## IV. CONCLUSION

For the foregoing reasons, Defendant General Electric's Motion to Dismiss [Doc. No. 26] is **granted in part** and **denied in part.** Plaintiff's claim of disability retaliation (Count IV) is dismissed.

SO ORDERED.

Dated at New Haven, Connecticut, this  24th  day of April, 2007.

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court